RECEIVED
IN LAKE CHARLES, LA
JAN 2 2 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| THAMAS FARRIS, ET AL | : | DOCKET NO. 2:06 CV 2036 |
|---|---|---|
| VS. | : | JUDGE MINALDI |
| STATE FARM FIRE & CASUALTY COMPANY, ET AL. | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Presently before the court is Plaintiffs' motion to remand. (Doc. 10). It has been referred to the undersigned magistrate judge for a report and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

Plaintiffs, Thomas and Judy Farris (Farris), have instituted this action seeking to recover for damages they sustained to their property as a result of Hurricane Rita. The defendants are Plaintiffs' homeowner's insurer, State Farm Fire & Casualty Co. (State Farm), and the agent that sold the policy, Enos Derbonne (Derbonne). The suit was initially filed in the 38th Judicial District Court for Cameron Parish, Louisiana. State Farm removed the case to this court pursuant to 28 U.S.C. § 1441 contending that this court has original diversity jurisdiction in accordance with 28 U.S.C. § 1332. (Doc. 5). Plaintiffs have filed the motion to remand that is now before the court pointing out that both Plaintiffs and Derbonne are citizens of Louisiana so that the complete diversity required for original jurisdiction is lacking. State Farm contends that Derbonne's citizenship should be disregarded because, it claims, he has been fraudulently

1

joined/improperly joined.[1]

## Improper Joinder

Once a case has been removed, the burden lies with the removing party to prove that the court has jurisdiction to decide the claim. *Jernigan v. Ashland Oil Inc.* 989 F.2d 812, 815 (5th Cir. 1993)(citing, *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992)). One prerequisite to removal is that this court must have original jurisdiction. 28 U.S.C. § 1441(a). In some cases, including this one, there is an additional requirement for removal–that "none of the parties in interest, properly joined and served as defendants" is a citizen of the forum state. 28 U.S.C. § 1441(b). If removal is based on the claim that non-diverse parties have been improperly joined, then the removing party must establish either: "actual fraud in the pleading of jurisdictional facts," or "an inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004)(*en banc*), *cert. denied by*, *Illinois Cent. R. Co. v. Smallwood*, ___ U.S. ___, 125 S.Ct. 1825 (4/18/2005)(citing, *Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003)). In the case *sub judice*, there are no allegations of actual fraud. Accordingly, our focus is the second basis for improper joinder. *See, Travis, supra.*

The focus of the court's inquiry is on the joinder of the forum state citizen, not on the merits of Plaintiff's case. *Smallwood, supra* at 573. In resolving this issue, we must determine whether the removing defendant has demonstrated that plaintiff has "no possibility of recovery" against the in-state/non-diverse defendant; *i.e.* that there is "no reasonable basis" for the district

---

[1] This court issued an order notifying the parties that if, and only if, the court finds that Derbonne was misjoined that a sua sponte summary judgment would be entered in his favor. (Doc. 12).

2

court to predict that the plaintiff might recover against the in-state/non-diverse defendant. *Smallwood, supra.*

The court may resolve this issue in one of two ways: 1) the court can look at the allegations of the complaint to determine whether the complaint states a claim against the in-state/non-diverse defendant under state law (*i.e.* a Fed.R.Civ.P. 12(b)(6) analysis); or 2) in the few cases where the plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry. *Smallwood, supra.* Ordinarily, if Plaintiff survives the 12(b)(6) analysis there is no improper joinder. *Id.* The "summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id* at 573-74.[2] The motive or purpose for the joinder of the in-state defendant is irrelevant to this inquiry. *Id.* at 574. The court must consider "all unchallenged factual allegations" in the light most favorable to the plaintiff. *Travis, supra.* Any contested issues of fact and ambiguities of state law must be resolved in favor of remand. *Id.* If the removing defendant fails to establish improper joinder, then diversity is not complete (and/or removal is improper), and remand is required. *Id.*

Plaintiffs claim that Derbonne breached his duty: (1) to supply plaintiff with a complete and full explanation of critical policy interpretations and practices by State Farm in the event of a catastrophic loss as a result of a hurricane, and (2) to adequately advise Plaintiffs of the need for additional flood insurance. Plaintiff's petition. More specifically, Plaintiffs fault Derbonne for failing to fully advise them regarding the operation and effect of a "concurrent cause exclusion."

---

[2] In other words, facts that can be easily disproved if not true. *Id.*

3

In asserting that Derbonne was improperly joined State Farm argues that there is no possibility of recovery against Derbonne because: (1) as a matter of law Derbonne owed no duty causally related to the damages claimed by Plaintiffs; and (2) any claims of Plaintiffs are barred by La.R.S. 9:5606.[3]

Agent's Duties

*Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728 (La. 1973) was a suit by an insured against his insurance agent. The insured had requested liability insurance with $100,000 limits but the agent, due to an error on his part, had only obtained $10,000 limits. In finding for the insured the court stated:

> An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested insurance. The client may recover from the agent the loss he sustains as a result of the agent's failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly insured in the amount of the desired coverage.
> 281 So.2d at 730-31.

In *Roger v. Dufrene*, 613 So.2d 947 (La. 1993) the insured sued it's State Farm agent claiming that the agent was liable for failing to obtain an indorsement providing coverage while the insured's employees were driving their own vehicles. The court noted that the duty imposed on an insurance agent in an action by his client was one of "reasonable diligence a breach of which duty results in an action in negligence." *Id.* at 949 (internal quotes omitted). There was no suggestion that the insured might not be considered the "client" of the State Farm agent.

---

[3] State Farm also claims that Derbonne was misjoined and that his citizenship should be disregarded for that reason as well. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996). The outcome of the fraudulent joinder/improper joinder analysis makes consideration of this issue unnecessary.

4

In *Durham v. McFarland, Gay and Clay, Inc.*, 527 So.2d 403 (La.App. 4 Cir. 1988) the insured sued his insurance agent/broker for failing to procure flood insurance coverage on the insured's residence. Defendant argued that *Karam* set out an exclusive list of the duties owed by an agent/broker to the insured. The court rejected this argument stating:

> Clay was acting as Durham's broker and thus is responsible for any fault or neglect while performing in that capacity. The jurisprudence has recognized that a broker's <u>fiduciary duty includes advising his client with regards to recommended coverage</u>, to investigate and ascertain the financial condition of prospective companies, and to notify the insured of cancellation or termination of coverage. We conclude that the *Karam* decision does not relegate the insurance broker to a mere "order taker". That case sets out the broker's duties when there is an admitted request for insurance, but <u>is not an exclusive recitation of a broker's duties to his client</u>.
> 527 So.2d at 405 (citations omitted, emphasis supplied).

The court went on to affirm the finding of fault on the part of the agent/broker. In doing so the court noted that the finding of fault was supported even absent a specific request by the insured for flood insurance. *Id.* at 407.

In *Crayton v. Sentry Insurance Co.*, 612 So.2d 767 (La.App. 1 Cir. 1992), *writ denied*, 614 So.2d 83-84 (La. 1993) the insured homeowners sued their insurance agent because their homeowners' policy was voided due to the increased risk created by the presence or paint supplies on the premises. The agent, an exclusive Sentry agent, had inspected the property and failed to inform them that the presence of the paint supplies would threaten their coverage. The agent argued that since he was an agent and not a broker that he did not owe a duty to the insureds to inform them that the presence of the paint supplies would void the policy. The court rejected this argument. First, the court concluded that the distinction between an agent and a broker was immaterial since both brokers and agents owe the same duty to a client for whom they

5

have agreed to procure insurance. *Id.* at 771. The court also held that this duty included the duty to inform "the insured upon inspection of the premises of conditions which would constitute an 'increased hazard' which would thereby void the policy." *Id.*

In *Zinsel v. J. Everett Eaves, Inc.*, 749 So.2d 798 (La.App. 5 Cir. 1999) the insured sustained a $300,000 underinsured flood loss due to the fact that its coverage had not been increased when Congress had increased the available limits of flood insurance. The insured sued its insurance agency claiming that the agency had breached the agency's duty to keep it informed of changes in available flood insurance. The court found that the agency owed a fiduciary duty to the insured to keep its client abreast of pertinent changes in available flood insurance. *Id.* at 800. It affirmed the lower court's denial of liability based on evidence, including expert testimony, that the agency's duty was satisfied by the fact that the insurer had mailed the insurer a letter advising of the change in available flood insurance.

*Taylor v. Sider*, 765 So.2d 416 (La.App. 4 Cir. 2000), *writ denied*, 771 So.2d 86 (La. 2000) involved a suit by an insured against her State Farm agent. The insured had been limited to one $10,000 UM limit due to the anti-stacking provisions of Louisiana law. She claimed that the agent had breached the duty owed to her in that he had failed to explain the nature of the UM anti-stacking provisions. The court noted that both agents and brokers owe the same duty to a client for whom they have agreed to procure insurance, and, that in some cases the agent owes a fiduciary duty to the insured. Based on this the court reversed a judgment granting an exception of no cause of action.

The Louisiana Supreme Court has rejected the argument that the duty of an agent/broker depends on his status as either a broker or an agent. *Tiner v. Aetna Life Insurance Co.*, 291

So.2d 774 (La. 1974). In *Tiner* the broker was specifically found to be the mandatary of the insurer. *Tiner*, supra at 777. In so finding the court concluded that it was not the insurance agent's classification as a broker or agent that controlled; it was whether a principal-mandatary relationship existed with the insured that was determinative. "Statutes regulating licensing and defining agents, brokers, and solicitors are not intended to change or to exclude the general laws of agency. . . ." Id. La.C.C. art. 3000 specifically provides: "A person may be the mandatary of two or more parties, such as a buyer and a seller, for the purpose of transacting one or more affairs involving all of them. . . ." "The mandatary is bound to fulfill with prudence and diligence the mandate he has accepted. . . ." La.C.C. art. 3001. The mandatary must also discharge his obligations in good faith. La.C.C. art. 1759. "[W]hen the circumstances so require, the mandatary is bound to provide information. . . ." La.C.C. art. 3003. Under Louisiana law it is possible that Derbonne was a mandatary of both State Farm and Plaintiffs. *See also Breck Construction Co.,LLC v. Thomas, Farr & Reeves Agency, Inc.*, 852 So.2d 1151 (La.App. 2 Cir. 2003)[4]; *Smason v. Celtic Life Insurance Co.*, 615 So.2d 1079, 1087-88 (La.App. 4 Cir. 1993), *writ denied*, 618 So.2d 416 (La. 1993)[5] (finding broker was not agent of insurer under the circumstances, but acknowledging that either a broker or agent can be mandatory of

---

[4] While *Breck* concluded that a broker/agent had no duty to inform the insured that a builder's risk policy was lapsing under the circumstances presented it specifically stated: "This case is distinguishable from prior cases that found a breach of a duty by an agent to its client for failure to notify because in those cases there was no information conveyed to the client that it was not properly insured." Notably, in the present case Plaintiffs contend that the agent failed to convey to him that he was not properly insured.

[5] Article 3016 of the Civil Code of 1870 formerly referred to a person who acts as a mandatory to both parties to a matter as a broker. La.C.C. art. 3000 replaced the former article 3016, and no longer makes reference to a broker.

both parties); *Dauzat v. Gem Underwriters, Inc.*, 602 So.2d 196, 200 (La.App. 3 Cir. 1992), *writ denied*, 605 So.2d 1368 & 1370 (La. 1992) (". . . insurance broker, has a fiduciary responsibility to the insured as well as to the insurer and is therefore responsible for its fault or neglect); *Boyter v. Blazer Construction Co., Inc.*, 505 So.2d 854, 861 (La.App. 2 Cir. 1987)("In the absence of special circumstances, an insurance broker generally is considered to be the agent of the insured in procuring a policy of insurance."); *Foster v. American Deposit Insurance Co.*, 435 So.2d 571, 574 (La.App. 3 Cir. 1983) ( "Whether a broker in a particular transaction acts as the agent of the insured or of the insurer, is a question of fact dependent on the circumstances of the case.").

Defendant cites *Graves v. State Farm Mutual Auto Insurance Co.*, 821 So.2d 769 (La.App. 3 Cir. 2002), *writ denied*, 829 So.2d 435 (La. 2002) in support of their claim that Derbonne had no duty to advise Plaintiffs with regard to their coverage. In *Graves* the insured sued the insurance agent claiming that he was negligent for failing to advise the insured to carry higher automobile liability limits. The evidence before the court established that the insureds were long-time customers of the agent, that they had little contact with anyone within the agent's office, and that they never sought any insurance advice. The court relied on *Smith v. Millers Mutual Insurance Co.*, 419 So.2d 59 (La.App. 2 Cir. 1982), *writ denied*, 422 So.2d 155 (La. 1982) and found that there was no duty to advise the insured to purchase higher automobile liability limits.

In *Smith* the insured had an automobile liability policy with $100,000/300,000 limits and was found to be personally liable for damages exceeding his policy limits by over $100,000. He sued his agent claiming that the agent was negligent in failing to recommend higher liability limits. In rejecting this claim the court stated:

8

The stated liability limits of an insurance policy is not a complex matter or provision. Although an insured should not be held to have read and understood the complex and often confusing intricate detailed provisions of an insurance policy, an insured should be held to have read and know the liability limits of his automobile insurance policy, plainly disclosed on the face of the policy, particularly where, as here, the insured is an educated, experienced businessman, signed an application showing the policy limits, and has received copies of his policy each year for several years with advice to review it. 419 So.2d at 65.

The court of appeal also specifically adopted the reasons for judgment by the trial court. These reasons for judgment made a clear distinction between liability limits and homeowner's limits stating: "No case has been cited that places a duty on an agent to advise what limits should be carried. Homeowners' limits and equipment coverage is different for what ought to be in place in those areas can be ascertained. This court cannot say what is a safe liability coverage." *Smith, supra* at 86.

Resolving ambiguities in state law in favor of Plaintiffs this court concludes that Plaintiffs' petition states a cause of action against Derbonne. Furthermore, the summary judgment evidence does not reveal the presence of discrete and undisputed facts that would preclude a finding that Derbonne was negligent.

<u>Are Claims Against the Agent Barred by La.R.S. 9:5606</u>

Defendant also argues that there is no possibility of recovery against Derbonne because any such claims are barred by La.R.S. 9:5606. This statute provides, in pertinent part:

> A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee . . . shall be brought unless filed . . . within one year from the date of the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
> . . . .

9

> D. The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

Dee Ann Derbonne's affidavit indicates that the relevant policies were acquired by Farris through an assignment in November, 1995. Farris was provided with a copy of the policies at this time. In the three years prior to Hurricane Rita Plaintiffs only contacted Derbonne's agency on one occasion. In June, 2004, Plaintiffs asked to have their deductible increased from $1000 to $2000. Each year the policies were renewed Plaintiffs were sent a notice inviting them to contact Derbonne if they had any question regarding their coverage. In the three years prior to September 23, 2005, Plaintiffs did not contact Derbonne for any advice regarding their insurance. There is no summary judgment evidence raising a genuine issue as to any of these facts that might be material to the present matter. Essentially, Farris' affidavit asserts that while he never discussed changes in his coverage Derbonne at times took it upon himself to raise the limits on the homeowners' policy.[6]

Under these circumstances this court concludes that Plaintiff has no possibility of recovery against Derbonne because Plaintiffs' claims against Derbonne are barred by peremption pursuant to La.R.S. 9:5606. As previously noted there is a possibility that Derbonne breached a duty owed to Plaintiffs to properly advise them regarding their coverage. The issue here is whether that duty was breached within three years before the loss. Louisiana courts have consistently rejected the argument that mere policy renewals constitute a continuing tort or a separate tort in actions against insurance agents for breach of duties owed to their clients.

---

[6] Plaintiffs' homeowners' policy specifically provides for the limits to be increased for inflation. Defendant's Exhibit A, p. 21.

For example, in *Biggers v. Allstate Ins. Co.*, 886 So.2d 1179 (La.App. 5 Cir. 2004) the plaintiffs purchased homeowners insurance in 1995. They asked for supplemental coverage for jewelry and silverware. In 2002 plaintiffs' home was burglarized and the jewelry and silverware were stolen. Shortly thereafter plaintiffs discovered that their agent had not, as requested, obtained supplemental coverage for the jewelry and silverware. They sued their agent. When the agent raised R.S. 9:5606 as a defense plaintiffs argued that each time the policy was renewed there was either a continuing tort or a new tort. The court rejected plaintiffs' argument noting that after the issuance of the original policy, there was no occasion for the agent to misrepresent the coverage. Id. at 1183.

In *Bel v. State Farm Mut. Auto. Ins. Co.*, 845 So.2d 377 (La.App.1 Cir. 2003), *writ denied*, 845 So.2d 1057 (2003), plaintiffs sued their agent claiming that he was negligent in advising them that they did not need UM coverage under a personal umbrella policy. Based on the agent's recommendation a rejection of UM coverage under the umbrella policy was last signed in 1994 Suit against the agent was filed in 1998. In an attempt to avoid the effects of R.S. 9:5606 plaintiffs argued that each time the policy was renewed there was either a new and distinct tort or a continuing tort. The court rejected plaintiffs arguments. It held that the continuing tort doctrine was a "suspensive principle" and as such did not prevent the running of the peremptive periods set out in R.S. 9:5606. The court also found that the mere renewal of the policy was simply a continuation of the effects of the original wrongful act and not a separate and distinct tort. The court specifically noted that the insured did not discuss her coverage with the agent subsequent to signing the UM rejection in 1994.

In the present case there is not evidence that Plaintiffs contacted Derbonne in the three

11

years before the loss to discuss their coverage. Thus, while there is a possibility that Derbonne breached a duty owed to Plaintiffs this duty would not have been breached within the three years prior to the loss. Plaintiffs have cited no Louisiana cases which would suggest that there is a reasonable possibility that Louisiana courts would hold that the renewal of Plaintiffs' policies acted to restart the peremptive period of R.S. 9:5606.

While this court has concluded that Defendant has borne its burden of showing that Derbonne was fraudulently joined/improperly joined it is also important to emphasize what this court has not determined. In assessing its jurisdiction this court was neither called upon to determine nor has it determined the exact limits established by Louisiana law with regard to the duties of insurance agents and brokers. No "Erie guess" has been attempted. *See Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003). As it is required to do it has resolved all ambiguities in the law in favor of remand.

For the foregoing reasons, it is recommended that Plaintiffs' motion to remand be DENIED. It is further recommended that a sua sponte summary judgment be entered dismissing all claims against Enos Derbonne with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN**

ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 22nd day of January, 2007.

_____
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE